## Mather *et al. versus* Kinike.

1. A ground-rent was reserved payable in " twenty-one Spanish-coined fine silver pieces of eight and one-third part of a piece of eight, each piece weighing," &c., "or so much lawful money of the province of Pennsylvania as shall be sufficient from time to time to purchase such coin." *Held*, that this is a covenant for a specific article, and not for a sum in currency.

2. In 1773 the coin reserved was not a currency of the province, nor since the Act of Congress of February 27th 1857 ; nothing now is a legal tender here except our own gold and silver coin and treasury notes.

3. The covenant is for a foreign commodity; and not a debt under our legal-tender laws, and it can be discharged only by the article stipulated for, or money enough to buy it.

ERROR to the Court of Common Pleas of *Philadelphia*, where this was an amicable action of covenant between Joseph Kinike, plaintiff, and Ann W. Mather, Catharine M. Mather and Emily R. Mather, in which the following case was stated :—

The action (covenant) is on two ground-rent deeds, dated October 12th 1773, conveying to Seymour Hart two lots of ground therein described, and reserving out of each of said lots a ground-

[Mather *v.* Kinike.]

rent in the following words : " Yielding and paying therefor unto the said grantor, his heirs and assigns, the yearly rent or sum of twenty-one Spanish coined fine silver pieces of eight and one-third part of a piece of eight, each piece of eight weighing seventeen pennyweights and six grains, or so much lawful money of the province of Pennsylvania as shall be sufficient from time to time to purchase or procure twenty-one such pieces of eight and one-third part of a piece of eight, on the 12th day of October yearly for ever."

And containing covenants on the part of the said grantee, his heirs and assigns, that he and they shall and will from time to time, and at all times thereafter, pay or cause to be paid to the said grantor, his heirs and assigns, " the aforesaid yearly rent or sum of twenty-one Spanish coined fine silver pieces of eight and one-third part of a piece of eight, each piece of eight weighing seventeen pennyweights and six grains, or so much lawful money of the said province of Pennsylvania as shall be sufficient to purchase or procure twenty-one such pieces of eight and one-third part of a piece of eight, hereby reserved on the 12th day of October yearly for ever, as the same shall grow due and payable."

Prior to the 12th of October, 1863, the title to the said rents became vested in the plaintiff, and the title to the lots subject to the said ground-rents in the defendants. On the 12th of October 1863, one year's rent became due on each of said lots under said deeds. The defendants tendered and have paid into court, under plea of tender, the sum of $42.67 in the legal tender notes of the United States of America, authorized by the Acts of Congress of July 11th, A. D. 1862, and March 3d, A. D. 1863, as payment of said ground-rents so accrued. Plaintiffs refused to accept the same.

The coin mentioned in said ground-rent deeds was worth, or could have been purchased on the said 12th day of October, A. D. 1863, at the rate of 142½ cents in legal tender notes aforesaid, for each piece of eight, such as are mentioned in said deeds. The highest price which such coin has since reached in the said legal tender notes was July 11th 1864, when it was worth 290 cents per piece of eight, and the same is now worth 240 cents per piece of eight, or thereabouts.

If the court should be of opinion that the money so tendered was sufficient satisfaction of the rents so due October 12th 1862, then judgment to be entered for defendants ; if otherwise, judgment for plaintiff for such amount as he may be entitled to under the facts herein stated.

The Court of Common Pleas held that the covenant was not satisfied by the tender of the notes ; that the reservation was of a particular kind of coin, with the alternative of its value in lawful

money, and that the ground landlord was entitled either to the particular kind of coin, or its real value in lawful money.

That the measure of damages was the value of the coin at the time the rent fell due, and that the plaintiff could not recover more on the ground that the description of coin has since been worth more.

The judgment of the court was entered for the value of the particular coin on October 12th 1863, with interest to date of judgment.

*W. W. Wister, Jr.*, for plaintiff in error.—1st. Do the legal tender clauses in the Acts of Congress have the effect of making the notes issued under them, payment at their nominal value for debts previously payable in specie ? and if so,

2d. Whether a debt to be paid in foreign coin is an exception, and whether on a failure to pay, the damages are to be estimated by the court according to the Acts of Congress, or by the jury on evidence of the market rate of the coin ?

If the notes are not payment according to their face wherever a contract was for specie of a particular kind, or was silent as to the kind, the clauses would be useless, for making them lawful money would make them payable at their market rate.

If the primary intent of the contract is payment of money, although a certain kind is named, the payment can be made in any money current at the time of payment, without regard to the market value of the kind: The case of Mixed Money, Davies' Rep. 28 ; Pough *v.* De Lindsay, 1 Dyer 82; Wood *v.* Bullin, 6 Allen 516.

Unless by the foreign money called for is unmistakably meant a commodity, no difference will be made between domestic and foreign money.

When this covenant was made the currency of Pennsylvania was composed of the coinage of all countries, the Spanish dollar being recognised as forming the unit; it was essentially the standard to fix the rate of other pieces of money. The contract here shows that the primary intent was the payment of money. The alternative clause, " or so much lawful money—as will be sufficient to purchase—such pieces of eight," show that the parties meant money, and if they could not obtain one kind, another of equal amount was called for.

The Act of Congress April 12th 1792, § 9, Stat. at Large 246, provides for coining " dollars or units—of the value of a Spanish dollar ;" and by section 16, they shall be a legal tender. This act makes a delivery of American dollars a compliance with the contract to deliver Spanish dollars ; and evidence of the market value is inadmissible : Keffer *v.* Newman, in note to McQuesney

*v.* Heister, 9 Casey 442. If this be correct the Acts of Congress, substituting legal-tender notes for coin, would work a like effect.

*J. Cooke Longstreth*, for defendant in error.—The vice of the plaintiff's argument is two-fold: 1. In the assumption that the Spanish piece of eight is the dollar, in the sense that that word expresses the idea of the unit of legal money of the United States of America; and 2d. That the primary intent of the reservation of rent is the obtaining of a fixed sum in currency, rather than a commodity or article of merchandise or trade.

The Act of Congress of April 12th 1792, referred to in plaintiff's paper-book, as well as all other acts authorizing the currency of foreign gold and silver coins, and declaring the same a legal tender, in payment for debts, were repealed by Act of 27th February 1857, § 3, Brightly's Digest, p. 156, paragraph 41; so that even if it were admitted, that the coin named in the deed was the same as the Spanish milled dollar, neither at the time the deed was made, nor at the time the rent sued for fell due, were foreign coins lawful money of the United States.

A covenant to pay in pieces of eight is as much a covenant to pay in kind as a covenant to pay in bushels of wheat, and the breach is to be compensated in damages on the same principle, to wit: that of value of the article at the time of breach, in either instance. Now, the law-making power has no more attempted to fix the value of a piece of eight than of a bushel of wheat. On the whole, it is submitted, that this case is as much outside of the purview and intent of the statutes transmuting promises to pay, into money or currency of the United States, as it is outside of their words.

The opinion of the court was delivered, January 23d 1866, by

WOODWARD, C. J.—The ground-rent reserved by the deed of October 12th 1773, was payable in "twenty-one Spanish coined fine silver pieces of eight and one-third part of a piece of eight, each piece of eight weighing seventeen pennyweights and six grains, or so much lawful money of the province of Pennsylvania as shall be sufficient from time to time to purchase or procure twenty-one such pieces of eight and one-third part of a piece of eight."

This was manifestly a covenant for a specific article and not for a sum in currency. The alternative in which lawful money is mentioned was only another mode of securing to the landlord, in all contingencies, his twenty-one pieces of Spanish coin; if they were not specifically rendered, money enough should be furnished to purchase them, whatever the money of the province might for the time be. The coin here designated corresponded in value very nearly to what has generally been our silver dollar, but it

[Mather *v.* Kinike.]

was not a currency of the province when the deed was made, nor when the rent accrued which is claimed in this suit, for though several Acts of Congress subsequent to this deed had made foreign coins legal tenders, they were all repealed by the Act of 27th February 1857, and now nothing is a legal tender with us except our gold and silver coins and our treasury notes, commonly called greenbacks. This cannot, therefore, be considered a covenant for lawful money of the United States, else it would be redeemable in greenbacks; but it is a covenant for a foreign commodity, and therefore not a debt within the meaning of the existing Acts of Congress that fix our legal tender; such a covenant can only be discharged by rendering the article stipulated for or paying money enough to buy it. In our late opinions upon the Legal-Tender Law we were all agreed upon *this* point. A contract for specific articles, if not performed, must be compensated in the currency of the country according to the value of the articles stipulated for. Contracts for the payment of money, or "lawful money," as they are usually phrased, are contracts for the payment of the legal tenders of the country, but this was not a contract for money, as our law defines money, but was a contract for a commodity as much so as if it had been wheat, or gold and silver in ingots or bullion. The fact that *coins* were stipulated for is immaterial, since they were not coins that our law recognises as money.

We think the court below were right in all their rulings, and the judgment is affirmed.